THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEYERHAEUSER COMPANY, a Washington corporation; WEYERHAEUSER NR COMPANY, a Washington corporation; and ASPEN INSURANCE UK LIMITED, a company formed under the laws of England and Wales,<br><br>Plaintiffs,<br><br>v.<br><br>AIG CLAIMS, INC., a New Jersey corporation, LEXINGTON INSURANCE COMPANY, a Delaware corporation; NATIONAL INTERSTATE INSURANCE COMPANY, an Ohio corporation; FIRST MERCURY INSURANCE COMPANY, an Illinois corporation; and THE NORTH RIVER INSURANCE COMPANY, a New Jersey corporation,<br><br>Defendants. | No. 2:20-cv-01371-RSM<br>JURY DEMAND<br><br>PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT |

## I. PARTIES

1. Plaintiffs Weyerhaeuser Company and its wholly-owned subsidiary Weyerhaeuser NR Company (collectively "Weyerhaeuser") are incorporated under the laws of Washington and their principal place of business is in Seattle, Washington.



CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

2. Plaintiff Aspen Insurance UK Limited ("Aspen") is a company formed under the laws of England and Wales with its principal place of business in London, United Kingdom.

3. Aspen issued an umbrella insurance policy to Weyerhaeuser within Washington State.

4. Upon information and belief, Defendant Lexington Insurance Company ("Lexington") is a business entity organized under the laws of Delaware that, at all relevant times, was engaged in the business of selling insurance policies in Washington State.

5. Upon information and belief, AIG Claims, Inc. ("AIG Claims") is a business entity organized under the laws of Delaware that, at all relevant times, was engaged in the business of insurance in Washington State. AIG Claims adjusted the claim at issue.

6. Upon information and belief, Defendant National Interstate Insurance Company ("National Interstate") is a business entity organized under the laws of Ohio that, at all relevant times, was engaged in the business of selling insurance policies in Washington State. National Interstate is sued only in its capacity as an excess insurer to Gardner Trucking, Inc. ("Gardner") and not a primary insurer as discussed below.

7. Upon information and belief, Defendant First Mercury Insurance Company ("First Mercury") is a business entity organized under the laws of Delaware that, at all relevant times, was engaged in the business of selling insurance policies in Washington State.

8. Upon information and belief, Defendant the North River Insurance Company ("North River") is a business entity located in New Jersey that, at all relevant times, was engaged in the business of selling insurance policies in Washington State.



CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

9. As discussed further below, Defendants Lexington, National Interstate, First Mercury, and North River each issued separate "follow form" excess insurance policies to Gardner.

10. Defendants Lexington, National Interstate, First Mercury, and North River shall be referred to collectively as the "Gardner Excess Insurers."

## II. VENUE AND JURISDICTION

11. Plaintiff invokes the jurisdiction of this Court pursuant to the Washington Uniform Declaratory Judgment Act, RCW 7.24, *et seq*. and the Washington Consumer Protection Act, RCW 19.86, *et seq.* The Court has jurisdiction to determine questions of actual controversy between the parties to this action as discussed more fully below.

12. Venue is proper in this Court pursuant to RCW 4.12.025, because Defendants transact business within King County. Venue is also proper in this Court because a substantial part of the events or omissions giving rise to this action occurred in King County, including Defendants' improper claims handling and the damages suffered by Plaintiffs as discussed below.

## III. FACTS

### A. <u>The Motor Carrier Contract</u>

13. On July 20, 2009, Gardner executed a Dedicated Truckload Master Motor Carrier Contract with Weyerhaeuser ("Gardner Contract"). Attached hereto as **Exhibit A** is a copy of the Gardner Contract. The Gardner Contract provides, in pertinent part:

> **9. INDEMNIFICATION** It is expressly understood and agreed, to the extent not otherwise limited herein, each party agrees to indemnify, defend and hold the other party harmless from and against any and all claims by third parties arising out of the performance of this contract only to the extent such third party's injury, damage or loss is proximately caused by the other party herein. Each party is responsible for their own actions or inactions. The indemnification herein provided



CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

> for shall apply to, but shall not be limited to, all costs, expenses, and attorney's fees incurred or payable in investigating, defending, or settling such claims, penalties or fines. The parties acknowledge that it is the responsibility of the carrier to confirm the security, stability of each load before leaving the pick up point […]
>
> **10. INSURANCE**
>
> 10.1 Carrier [Gardner] will at all times during the Term maintain insurance as specified in Attachment D, Insurance.
>
> * * *
>
> 10.5 Carrier will ensure that any subcontractor it uses in performance of this Agreement shall also have insurance coverage consistent with the requirements of this Section and Attachment D.
>
> 10.6 Weyerhaeuser will be named as an additional insured or loss payee on all insurance policies.
>
> * * *
>
> **Attachment D**
> **INSURANCE**
>
> Carrier will at all times during the Term of Agreement, at its expense, maintain insurance of the types and amounts specified below:
>
> * * *
>
> 3. Automobile or Truck Liability Insurance, covering all vehicles and trailers used in conjunction with this Agreement, with limits of no less than:
>
>    i. $1,000,000 per occurrence if no Hazardous Material is transported
>
> * * *
>
> 5. Comprehensive General Liability insurance with a minimum combined single limit of $2,000,000 per occurrence and in the aggregate for bodily injury, death, arid property damage. Such



CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

> liability insurance will also include coverages for broad form property damage, including products/completed operations, blanket contractual and independent contractors.
>
> * * *
>
> 7. All insurance policies provided by Shipper will be primary and name Weyerhaeuser as either an additional insured or a loss payee.

14. In sum, the Gardner Contract: (a) provided that Weyerhaeuser was an "additional insured" under "all insurance policies" purchased by Gardner; (b) established a floor for the amount of relevant coverage that Gardner was required to secure – coverage "with limits of no less than . . . $1,000,000 per occurrence"; and (c) indicated that Gardner's coverage was "primary" relative to Weyerhaeuser's own coverage, including the coverage provided by Aspen.

15. As discussed more fully below, Gardner secured the coverage required by the Gardner Contract for the period relevant to this dispute, including the excess coverage provided by the Gardner Excess Insurers.

**B. <u>The Underlying Lawsuit</u>**

16. On or about January 25, 2017, Peter and Silvia Alfaro ("Alfaros") filed a Complaint in the Superior Court of the State of California, for the County of Los Angeles, captioned as *Peter Alfaro and Silvia Alfaro v. Weyerhaeuser Company and Does 1 through 50, inclusive,* Case No. BC646685 ("Underlying Lawsuit"). Weyerhaeuser NR Company was subsequently added as a defendant.

17. The Alfaros alleged that on or about October 26, 2015, Mr. Alfaro was working as a truck driver for Gardner and that Gardner required him to collect lumber from a wood products distribution facility in Santa Clarita, California ("Incident Site"), which was owned and operated by Weyerhaeuser NR Company.



CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

18. The Alfaros alleged that the lumber was negligently loaded onto the truck and that Mr. Alfaro was injured when the load of lumber fell onto him, causing him substantial injuries.

19. The Underlying Lawsuit alleged causes of action against Weyerhaeuser for negligence; negligent hiring, supervision and retention; and loss of consortium.

20. Weyerhaeuser initially tendered the claim arising from the Underlying Lawsuit to National Interstate, in its capacity as primary insurer of Gardner.

21. When it later became apparent that the coverage provided by National Interstate's primary policy would be insufficient to cover the Alfaros' claim, Weyerhaeuser also tendered the claim to: (a) the Defendants, which issued excess liability policies to Gardner, as an additional insured under those policies; and (b) Aspen, which issued an umbrella liability policy to Weyerhaeuser directly.

**C. <u>Insurance Policies</u>**

22. Aspen issued an umbrella liability policy, Policy No. K0A094114A0D, to Weyerhaeuser, with a policy period of November 1, 2014 to November 1, 2015 ("Weyerhaeuser Policy").

23. National Interstate issued a primary insurance policy to Gardner, Policy No. GAR819910002 with a $1,000,000 limit ("Primary Gardner Policy").

24. Lexington issued the first level excess policy, Policy No. 048883243, that sat above National Interstate's policy in Gardner's tower of coverage ("First-Level Excess Gardner Policy"). The First-Level Excess Gardner Policy provided a $2,000,000 layer of excess coverage that generally "followed form" to the underlying Primary Gardner Policy issued by National Interstate, including the additional insured coverage provided therein.



CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

25. Defendant National Interstate, in addition to issuing the Primary Gardner Policy, also issued the second level excess policy, Policy No. EXT0010760-00, that sat above the First-Level Excess Gardner Policy in Gardner's tower of coverage ("Second-Level Excess Gardner Policy"). The Second-Level Excess Gardner Policy provided a $3,000,000 layer of excess coverage that generally "followed form" to the underlying Gardner Primary Policy and First-Level Excess Gardner Policy policies issued by National Interstate and Lexington, respectively, including the additional insured coverage provided therein.

26. Defendant First Mercury issued the third level excess policy, Policy No. MA-EX-0000058210-01, that sat above the Second-Level Excess Gardner Policy in Gardner's tower of coverage ("Third-Level Excess Gardner Policy"). The Third-Level Excess Gardner Policy provided a $5,000,000 layer of excess coverage that generally "followed form" to the underlying Gardner Primary Policy and First-Level and Second-Level Excess Gardner Policies mentioned above, including the additional insured coverage provided therein.

27. Defendant North River issued the fourth level excess policy, Policy No. 5227983162, that sat above the Third-Level Excess Gardner Policy in Gardner's tower of coverage ("Fourth-Level Excess Gardner Policy"). The Fourth-Level Excess Gardner Policy provided a $10,000,000 layer of excess coverage that generally "followed form" to the Gardner Primary Policy and excess policies identified above, including the additional insured coverage provided therein.

28. As noted above, Weyerhaeuser tendered the Underlying Lawsuit to Aspen, National Interstate, and the other Gardner Excess Insurers.

29. National Interstate responded to Weyerhaeuser's tender by: (a) agreeing that Weyerhaeuser qualified as an additional insured under the Primary Gardner Policy; (b) agreeing that a duty to defend was owed to Weyerhaeuser; (c) agreeing to defend and



CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

indemnify Weyerhaeuser up to the indemnity limit of its primary policy; and (d) eventually tendering the full amount of the $1,000,000 in coverage available under its policy.

30. Aspen notified Lexington about the Underlying Lawsuit and requested that Lexington afford coverage to Weyerhaeuser under the First-Level Excess Gardner Policy.

31. From May to August 2019, Aspen and Lexington exchanged multiple letters and emails regarding coverage for Weyerhaeuser as an additional insured under the First-Level Excess Gardner Policy for the claims against it in the Underlying Lawsuit.

32. Lexington (acting through Defendant AIG Claims), took a different position from National Interstate relative to National Interstate's conclusion that a duty to defend Weyerhaeuser was owed under the Primary Gardner Policy, contending that: (a) Weyerhaeuser did not qualify as an additional insured despite National Interstate's conclusion to the contrary; and (b) the First-Level Excess Gardner Policy did not provide any coverage under the theory that no coverage existed above the $1,000,000 coverage floor referenced in the Gardner Contract because the Blanket Additional Insured Endorsement in the Primary Gardner Policy indicated that the "limits of insurance applicable to the additional insured are those in written contract, agreement, permit or in the Declarations for this policy, whichever are less."

33. In other words, Lexington and AIG Claims took the position that the "minimum" floor required by the Gardner Contract – coverage "with limits of <u>no less than</u> . . . $1,000,000 per occurrence" – somehow set a "limit" for the coverage required by the Gardner Contract and that they were not obligated to provide any coverage over that amount.

34. Lexington later reiterated that questionable position via communications subsequently provided by representatives of Lexington and AIG Claims, again wrongfully



CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

refusing to provide coverage to Weyerhaeuser based on its mischaracterization of the Gardner Contract.

35. Defendants National Interstate, on behalf of its Second-Level Excess Gardner Policy, as well as First Mercury and North River, either expressly or implicitly adopted Lexington's position by refusing to comply with their obligation to defend or indemnify Weyerhaeuser by funding a reasonable settlement even after their excess layers were implicated.

36. Despite the wrongful conduct of the Gardner Excess Insurers, the fact that the Gardner Contract indicated that the coverage provided by the Gardner Excess Insurers was "primary," and the fact that Aspen's coverage was excess to the coverage provided by the Gardner Excess Insurers, Aspen cooperated with Weyerhaeuser to settle the Underlying Lawsuit, with Aspen and Weyerhaeuser each contributing towards a portion of the settlement.

37. Specifically, on January 31, 2020, counsel for Aspen provided advanced notice to all of the Gardner Excess Insurers of a mediation intended to resolve the Underlying Lawsuit.

38. The mediation was held on March 18, 2020 via video-conference.

39. The Gardner Excess Insurers were allowed to participate at the mediation and representatives and/or attorneys from several of the Gardner Excess Insurers attended the mediation.

40. Despite that fact, none of the Gardner Excess Insurers offered to contribute towards the settlement of the Underlying Lawsuit during the mediation.

41. For example, while National Interstate took part in the mediation and agreed to fund a portion of the settlement under the Primary Gardner Policy – again recognition of its own conclusion that Weyerhaeuser qualified as an additional insured and that a duty to defend



CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

was owed – it contradictorily failed to pay any amounts under the Second-Level Excess Gardner Policy.

42. The mediation concluded with a settlement under which National Interstate paid only the amounts available under the Primary Gardner Policy and none of the Gardner Excess Insurers contributed any amounts towards settlement, leaving Weyerhaeuser and Aspen alone to pay the remainder of the amounts necessary to achieve that settlement.

43. The Weyerhaeuser Policy provides that "If any Insured has rights to recover all or part of any payment The Company has made under this policy, those rights are transferred to The Company."

44. Under this provision, Aspen has contractual rights to recover its payment made on behalf of Weyerhaeuser towards settlement of the Underlying Lawsuit because Weyerhaeuser is entitled to coverage as an additional insured under the policies issued by the Gardner Excess Insurers.

45. Because Weyerhaeuser paid a portion of the settlement in the Underlying Lawsuit, Weyerhaeuser has its own right to recover its payment from the Gardner Excess Insurers.

46. On August 4, 2020, Weyerhaeuser provided statutory notice to each of the Gardner Excess Insurers and the Insurance Commissioner of Washington State regarding the Gardner Excess Insurers' violations of the Washington Insurance Fair Conduct Act ("IFCA"). More than twenty days have elapsed since the IFCA notices and none of the Gardner Excess Insurers have agreed to reverse their coverage positions or otherwise pay Weyerhaeuser's claim.



CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## IV. FIRST CAUSE OF ACTION

## DECLARATORY JUDGMENT

47. Plaintiffs repeat and reallege paragraphs 1 through 46 as if fully set forth herein.

48. By virtue of the conduct set forth above, Defendants breached their obligations to Plaintiffs under the Policy.

49. As a result of Defendants' failure to honor their obligations, an actual and justiciable controversy exists between Plaintiffs and Defendants as to Defendants' obligations to provide coverage to Weyerhaeuser and/or reimburse Aspen for monies paid by Aspen to resolve the Underlying Lawsuit.

50. Declaratory relief should be granted to Plaintiffs holding that: (a) Defendants breached their obligations; (b) Defendants are obligated to indemnify Plaintiffs against the claims asserted in the Underlying Lawsuit; and (c) the various excess policies issued by the Defendants to Gardner are primary to the Aspen Policy in terms of Weyerhaeuser's indemnification for the damages alleged in the Underlying Lawsuit and the resulting settlement.

## V. SECOND CAUSE OF ACTION

## BREACH OF CONTRACT

51. Plaintiffs repeat and reallege paragraphs 1 through 50 as if fully set forth herein.

52. By virtue of the conduct set forth above, by unreasonably interpreting their respective policies and the Gardner Contract, failing to provide coverage to Weyerhaeuser in the Underlying Lawsuit, and failing to reimburse Plaintiffs for amount paid in settlement of the Underlying Lawsuit, Defendants breached the obligations set forth therein.



CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

53. As a direct and proximate result of Defendants' breach of their contractual obligations, which is continuing to at least the date of this Complaint, Defendants have deprived Plaintiffs of the benefit of the insurance coverage and reimbursement of funds paid towards settlement of the Underlying Lawsuit, damaging Plaintiffs in an amount to be proven at trial.

## VI. <u>THIRD CAUSE OF ACTION</u>

## ATTORNEY'S FEES

54. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 53 as if fully set forth herein.

55. Weyerhaeuser, as an insured, and Aspen, as a subrogee of an insured Weyerhaeuser, in a legal action to obtain the benefits under an insurance policy, are entitled to attorney's fees and costs associated with compelling Defendants to fulfill their contractual obligations thereunder.

## VII. <u>FOURTH CAUSE OF ACTION – WEYERHAEUSER ONLY</u>

## BAD FAITH

56. Weyerhaeuser repeats and realleges the allegations contained in paragraphs 1 through 55 as if fully set forth herein.

57. By virtue of the conduct set forth above, Defendants' failure to reasonably investigate, interpret, apply, and honor the terms of its insurance policies constitutes a violation of Washington's insurance law and regulations and a breach of the Defendants' duty of good faith and fair dealing.

58. Accordingly, Weyerhaeuser is entitled to damages, prejudgment interest, and attorney's fees from the Defendants.



CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

**VIII. FIFTH CAUSE OF ACTION – WEYERHAEUSER ONLY**

**VIOLATION OF THE WASHINGTON STATE CONSUMER PROTECTION ACT**

59. Weyerhaeuser repeats and realleges the allegations contained in paragraphs 1 through 58 as if fully set forth herein.

60. By virtue of the conduct set forth above, Defendants breached Washington's insurance law and regulations, a single violation of which constitutes a *per se* unfair trade practice under the Washington Consumer Protection Act. Independent of the duties imposed by Washington's insurance law and regulations, Defendants' conduct otherwise constitutes an unfair or unlawful practice in trade or commerce.

61. Weyerhaeuser has suffered injuries to its business or property as a result of Defendants' unfair or unlawful practices.

62. Accordingly, Weyerhaeuser is entitled to damages, treble damages, prejudgment interest, and attorney's fees from the Defendants.

**X. SIXTH CAUSE OF ACTION – WEYERHAEUSER ONLY**

**VIOLATION OF THE WASHINGTON INSURANCE FAIR CONDUCT ACT**

63. Weyerhaeuser repeats and realleges the allegations contained in paragraphs 1 through 62 as if fully set forth herein.

64. By virtue of the conduct set forth above, Defendants breached Washington's Insurance Fair Conduct Act.

65. Accordingly, Weyerhaeuser is entitled to damages, treble damages, prejudgment interest, and attorney's fees from Defendants.

**IX. SEVENTHCAUSE OF ACTION – ASPEN ONLY**

**CONTRIBUTION/SUBROGATION**

66. Aspen repeats and realleges the allegations contained in paragraphs 1 through



CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

65 as if fully set forth herein.

67. Due to Aspen's payment towards the settlement of the Underlying Lawsuit, Aspen has legal, contractual, and/or equitable rights to see contribution and/or subrogation from the Defendants as set forth above.

68. Accordingly, Aspen is entitled to payment from the Gardner Excess Insurers and for pre-judgment interest for the amounts that it paid relative to the underlying settlement.

## X. PRAYER FOR RELIEF

Plaintiffs request relief as follows:

A. For judgment declaring that Defendants were obligated to pay the settlement reached in the Underlying Lawsuit and breached those obligations by refusing to do so;

B. For judgment declaring that Defendants are obligated to indemnify Plaintiffs for the settlement amounts paid to resolve the Underlying Lawsuit;

C. For judgment declaring that Defendants' conduct amounted to bad faith as to Weyerhaeuser;

D. For judgment estopping Defendants from denying coverage, contesting their duty to fund the settlement, or otherwise asserting any defenses to coverage;

E. For other damages as may be proven at trial;

F. For an award of costs and attorney's fees;

G. For an award of treble damages under the Washington Consumer Protection Act as to Weyerhaeuser;

H. For an award of treble damages under the Washington Insurance Fair Conduct Act;

I. For prejudgment interest; and



CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

J. For such other and further relief as the Court may deem just and equitable.

DATED this 23rd day of December, 2020.

*s/ Michael A. Moore*
Michael A. Moore, WSBA No. 27047
Jocelyn J. Whiteley, WSBA No. 49780
CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, WA 98154-1051
(206) 625-8600 Phone
(206) 625-0900 Fax
Email: mmoore@corrcronin.com
jwhiteley@corrcronin.com
Attorneys for Plaintiffs Weyerhaeuser Company and its wholly-owned subsidiary Weyerhaeuser NR Company

CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Eliot Harris
Miles J. M. Stewart
WILLIAMS, KASTNER, & GIBBS, PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Phone: 206-628-6600
Email: eharris@williamskastner.com
mstewart@williamskastner.com
Attorneys for Co-Plaintiff Aspen Insurance UK Limited

Robert A. ("Bob") Meyers
Alexander E. Potente
CLYDE & CO US LLP
701 Fifth Avenue, Floor 42
Seattle, WA 98104
(206) 438-3980
(415) 365-9869
Email: bob.meyers@clydeco.us
alex.potente@clydeco.us
Attorneys for Defendant National Interstate Insurance Company

Thomas Lether
Eric J. Neal
Sam Colito
LETHER LAW GROUP
1848 Westlake Avenue N., Suite 100
Seattle, WA 98109
Phone: 206-467-5444
Email: tlether@letherlaw.com
eneal@letherlaw.com
scolito@letherlaw.com
Attorneys for Defendants First Mercury Insurance Company and The North River Insurance Company

Gabriel Baker
Benjamin J. Roesch
JENSEN MORSE BAKER PLLC
1809 Seventh Avenue, Suite 410
Seattle, WA 98101
Phone: 206.682.1550
Email: gabe.baker@jmblawyers.com
benjamin.roesch@jmblawyers.com
Attorneys for Defendant Lexington Insurance Company

s/ Michael A. Moore
Michael A. Moore, WSBA No. 27047
Attorney for Plaintiffs Weyerhaeuser Company and its wholly-owned subsidiary Weyerhaeuser NR Company
CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Telephone: (206) 625-8600
E-mail: mmoore@corrcronin.com