UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WEYERHAEUSER COMPANY, et al.,

Plaintiffs,

v.

AIG PROPERTY CASUALTY, INC., et al.,

Defendants.

Case No.: 2:21-cv-03886-MEMF (Ex)

**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [ECF No. 109]**

Before the Court are the jointly prepared Motions for Summary Judgment of Plaintiffs Weyerhaeuser Company, Weyerhaeuser NR Company, and Aspen Insurance UK Limited, and Defendants AIG Claims, Inc., Lexington Insurance Company, National Interstate Insurance Company, First Mercury Insurance Company, and The North River Insurance Company. ECF No. 109-1. On June 30, 2022, the Court held a hearing on the matter. For the reasons that follow, the Court GRANTS IN PART Defendants' Motion for Summary Judgment and DENIES Plaintiffs' Motion for Summary Judgment.

## I. **Factual Background**[1]

Plaintiffs Weyerhaeuser Company and its subsidiary Weyerhaeuser NR Company ("Weyerhaeuser NR") are headquartered in Seattle, Washington. ECF No. 109-2 ("SUF") ¶ P1. They supply forest products for use in residential, multi-family, and commercial projects. *Id.* Non-party Gardner Trucking, Inc. ("Gardner") is a freight company with an address in California. *Id.* at ¶ NIIC9.

On or about July 20, 2009, Weyerhaeuser NR and Gardner executed a contract granting Gardner a right of first refusal to ship and transport Weyerhaeuser NR's forest products across the United States ("Motor Carrier Contract"). *Id.* at ¶ P3. As part of the Motor Carrier Contract, Gardner agreed to maintain "Automobile or Truck Liability Insurance, covering all vehicles and trailers . . . with limits of no less than . . . $1,000,000 per occurrence . . . ." *Id.* at ¶ P6. Gardner additionally agreed that "Weyerhaeuser will be named as an additional insured or loss payee on all insurance policies." *Id.* at ¶ P5.

Gardner purchased from Defendant National Interstate Insurance Company ("National Interstate") an insurance policy providing primary automobile liability coverage with a $1,000,000 per occurrence limit. *Id.* at ¶ P9; ECF No. 27-2 ("National Interstate Primary Policy"). The National Interstate Primary Policy contained a blanket endorsement including as additional insureds "any person or organization [Gardner is] required to add as an additional insured on this policy under a written contract, agreement or permit . . . ." SUF ¶ P10. The blanket endorsement further set the limits of insurance applicable to the additional insured as "those in the written contract, agreement, permit, or in the Declarations of the policy, whichever are less." *Id.* at ¶ P11.

Gardner additionally obtained several excess liability insurance policies that—by their terms—provide automobile liability coverage only after the National Interstate Primary Policy and lower-level policies have been exhausted. Gardner purchased the following excess policies:

---

[1] The summarized facts are undisputed and drawn from the parties' jointly prepared Statement of Undisputed Facts. ECF No. 109-2.

1. a first-level excess policy from Defendant Lexington Insurance Company ("Lexington") providing $2,000,000 in excess liability insurance, ECF No. 27-4 ("Lexington Excess Policy");
2. a second-level excess policy from National Interstate providing $3,000,000 in excess liability insurance, ECF No. 27-5 ("National Interstate Excess Policy");
3. a third level excess policy from Defendant First Mercury Insurance Company ("First Mercury") providing $5,000,000 in excess liability insurance, ECF No. 27-6 ("First Mercury Excess Policy"); and
4. a fourth-level excess policy from Defendant North River Insurance Company ("North River") providing $10,000,000 in excess liability insurance, ECF No. 27-7 ("North River Excess Policy"). SUF ¶ P13.

Each of the excess policies (collectively, "Excess Policies") contained "follow form" language incorporating the provisions of the followed National Interstate Primary Policy with limited exceptions. *Id.* at ¶ P14.

For itself, Weyerhaeuser Company purchased an "umbrella liability policy" from Plaintiff Aspen Insurance UK Limited ("Aspen") covering both Weyerhaeuser Company and Weyerhaeuser NR. *Id.* at ¶¶ P17, NIIC 15. The policy provided $10,000,000 in coverage subject to a $10,000,000 self-insured retention[2] ("Aspen Policy"). *Id.* at ¶ P17, NIIC 16.

On January 25, 2017, non-parties Peter and Silvia Alfaro sued Weyerhaeuser Company and Weyerhaeuser NR (collectively, the "Weyerhaeuser Entities") in Los Angeles County Superior Court (the "Underlying Action"). *Id.* at ¶¶ P20, P23. The Alfaros alleged that on or about October 26, 2015, during the coverage period of the abovementioned insurance policies and while Peter Alfaro was working as a Gardner employee, Peter Alfaro was injured at a Weyerhaeuser NR facility in Santa Clarita, California as he was inspecting his truck and trailer and preparing to strap down a load of lumber onto the trailer. *Id.* at ¶¶ P20–21, NIIC 15. Weyerhaeuser Company subsequently notified Aspen and Defendants of the Underlying Action. *Id.* at ¶ P27. National Interstate agreed to

[2] A self-insured retention "generally refers to the amount of a loss or liability that the insured agrees to bear before coverage can arise under the policy." *Legacy Vulcan Corp. v. Superior Ct.*, 185 Cal. App. 4th 677, 694 (2010).

defend and indemnify Weyerhaeuser Company and Weyerhaeuser NR pursuant to the National Interstate Primary Policy with a $1,000,000 limit. *Id.* at ¶ P26. However, National Interstate and Lexington denied coverage under their excess policies. *Id.* at ¶¶ P30–35. First Mercury and North River took the position that they had no obligation under their excess policies until the National Interstate Excess Policy and Lexington Excess Policy were exhausted. *Id.* at ¶¶ FMNR 6.

Eventually, Weyerhaeuser Company and Weyerhaeuser NR settled the Underlying Action for $17,500,000. *Id.* at ¶ NIIC 33. Of this amount, National Interstate paid $1,000,000 and Weyerhaeuser NR paid $9,000,000 to satisfy the $10,000,000 self-insured retention under the Aspen policy. *Id.* at ¶¶ NIIC 34, 35. Aspen paid the remaining $7,500,000. *Id.* at ¶ NIIC 35.

## II. <u>Procedural History</u>

The Weyerhaeuser Entities and Aspen filed a state court action against National Interstate, Lexington, First Mercury, and North River (collectively, "Gardner's Excess Insurers") in King County Superior Court in Washington on August 4, 2020. ECF No. 1 ("NOR") ¶ 1. Defendants removed the case to the United States District Court for the Western District of Washington on September 17, 2020, invoking the court's diversity jurisdiction. *See id.*

On December 23, 2020, Plaintiffs filed their operative Second Amended Complaint seeking: (1) a declaration that the Excess Policies were primary to the Aspen Policy, that Defendants were obligated to indemnify Plaintiffs against the claims in the Underlying Lawsuit, and that Defendants breached their obligations; (2) damages arising from Defendants' breach of contract; (3) attorneys' fees; (4) damages arising from Defendants' bad faith; (5) damages and penalties from Defendants' violation of the Washington Consumer Protection Act; (6) damages and penalties from Defendants' violation of the Washington Insurance Fair Conduct Act; and (7) contribution for the amounts Aspen paid in the Underlying Action. ECF No. 44 ("SAC") ¶¶ 47–68.

On January 5, 2021, Defendant National Interstate filed counterclaims seeking: (1) a declaration that California law applies to the National Interstate Primary Policy; (2) a declaration that National Interstate had no duty to defend or indemnity Weyerhaeuser NR; (3) a declaration that National Interstate is entitled to reimbursement for the money National Interstate spent defending and indemnifying Weyerhaeuser NR in the Underlying Action; (4) equitable restitution,

reimbursement, and damages from Weyerhaeuser NR for the amounts that National Interstate incurred defending and indemnifying Weyerhaeuser NR in the Underlying Action; (5) a declaration that National Interstate had no duty to defend or indemnity Weyerhaeuser Company; (6) a declaration that National Interstate is entitled to reimbursement for the money National Interstate spent defending and indemnifying Weyerhaeuser Company in the Underlying Action; and (7) equitable restitution, reimbursement, and damages from Weyerhaeuser Company for the amounts that National Interstate incurred defending and indemnifying Weyerhaeuser Company in the Underlying Action. ECF No. 49 ("Answer and Counterclaims") 29–36.

On April 22, 2021, the Western District of Washington transferred the case to the Central District of California. ECF No. 60. On November 19, 2021, Plaintiffs and Defendants moved and cross-moved for summary judgment on three issues: (1) whether California law determines the priority of coverage between Defendants' insurance policies and the Aspen Policy; (2) whether Weyerhaeuser Company or Weyerhaeuser NR qualify as additional insureds under Defendants' insurance policies; and (3) whether Defendants' insurance policies are primary to, or excess to, the Aspen Policy. *See generally* ECF No. 109-1 ("Mot."). On February 10, 2022, pursuant to an Order of the Chief Judge, this case was reassigned to this Court. ECF No. 117. On June 15, 2022, the Motions were re-noticed for hearing set for June 30, 2022. ECF No. 125.

On July 28, 2022, the Plaintiffs sought leave to file a supplemental brief with respect to the legislative history of California Insurance Code §11580.9(f).[3] ECF No. 137.

## III. <u>Legal Standard</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[3] Under the particular circumstances attendant to this case, leave is being granted to file this supplemental brief despite the fact that it is extremely late and does not address issues unknown to the parties during the original briefing. Because, as discussed below, the supplemental brief does not change the Court's analysis, the Court did not deem it necessary to grant the Defendants leave to file a response, as requested in the Objection filed by AIG Claims, Inc. and Lexington Insurance Company, ECF No. 139.

248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. PROC. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*
A court presented with cross-motions for summary judgment should review each motion separately, giving the nonmoving party for each motion the benefit of all reasonable inferences from the record. *Center for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008).

## IV. <u>Discussion</u>

### A. California Law Applies to the Priority of Coverage Issue *(Issue 1)*

"Generally where a defendant in a diversity case obtains a transfer, 'the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue.'" *Int'l Bus. Machines Corp. v. Bajorek*, 191 F.3d 1033, 1036 (9th Cir. 1999) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964)). Because this case was transferred from the Western District of Washington, the Court applies Washington choice of law principles to determine whether Washington or California law applies to the issues in this case.

Washington requires courts to determine the applicable law on an issue-by-issue basis. *Williams v. State*, 76 Wash. App. 237, 241 (1994) ("[C]hoice-of-law depends upon which of two or more jurisdictions has the 'most significant relationship' to a specific issue."). Plaintiffs argue that

Washington law applies to all the issues in the present case. *See* Mot. 50–70.[4] Defendants argue that California law applies with respect to a single issue, *i.e.*, whether Defendants' insurance policies are primary to, or excess to, the Aspen Policy. *See* Mot. 70–84. Because the parties disagree about the choice of law only with respect to the priority of coverage issue, the Court limits its choice of law analysis to that issue.

*1. There is an Actual Conflict of Law Between Washington and California With Respect to Priority of Coverage*

"When parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before Washington courts will engage in a conflict of laws analysis." *Seizer v. Sessions*, 132 Wash. 2d 642, 648 (1997). If the result for a particular issue "is different under the law of the two states, there is a 'real' conflict." *Id.* Absent such a conflict, Washington law controls. *Id.* at 648–49.

National Interstate does not contest Plaintiffs' assertion that under Washington law, the National Interstate Primary Policy would take priority over the Aspen Policy. *See* Mot. 112–13. The Aspen Policy contained an "Other Insurance" clause providing: "If other valid and collectible insurance is available to the Insured covering an Occurrence also covered by this policy, . . . the insurance afforded by this policy shall be *in excess of* and shall not contribute with such other insurance." SUF ¶ P19 (emphasis added). The National Interstate Primary Policy, on the other hand, does not contain similar language. *See generally* National Interstate Primary Policy.

However, National Interstate argues that under California Insurance Code section 11580.9(c), the opposite is true: The Aspen Policy is primary to the National Interstate Primary Policy notwithstanding the Aspen Policy's "Other Insurance" clause. *See* Mot. 119–24. Because the Court agrees, for reasons explained in Section C below, that California law dictates that the National Interstate Primary Policy is excess to the Aspen Policy, and that Washington law would dictate that the Aspen Policy is excess to the National Interstate Primary Policy, the Court determines that there

[4] These page numbers are the numbers assigned by the CM/ECF system.

is an actual conflict between Washington law and California law as to the priority of coverage between the National Interstate Primary Policy and the Aspen Policy.[5]

The Court also determines that there is an actual conflict between Washington law and California law as to the priority of coverage between each of the Excess Policies and the Aspen Policy. As discussed in Section C below, California law establishes that each of these policies is excess to the Aspen Policy. Assuming without deciding—for the purpose of this analysis—that Weyerhauser and Aspen are correct with respect to the result of applying Washington law to the question of priority of coverage between the Excess Policies and the Aspen Policy, Garnder's Excess Insurers have established an actual conflict: Washington law would dictate that the Aspen Policy is excess to the Excess Policies whereas California law dictates the opposite—that the Excess Policies are excess to the Aspen Policy.[6]

### 2. *California Has the Most Significant Relationship to the Priority of Coverage Issue*

Given a conflict of law, Washington courts apply the law of the jurisdiction with the "most significant relationship" to a given issue. *Seizer*, 132 Wash. 2d at 650. Washington courts consider the following five factors:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

---

[5] Because the Court determines that California Insurance Code section 11580.9(c) gives rise to a conflict of law as to the priority of coverage between the National Interstate Primary Policy and the Aspen Policy, which requires this Court to move to the next step of the Washington law choice of law analysis, the Court does not reach the parties' other arguments on the choice of law question. *See* Mot. 50–62.

[6] Lexington also argues that Weyerhauser does not qualify as an additional insured under Washington or California law, applying general principles of contract interpretation. For example, the Lexington Excess Policy contains language purporting to cover only those "Loss Amounts in excess of the Underlying Limits," where the "Underlying Limits" are defined to include "[o]ther insurance (including any self-insurance retentions) applicable to any Claim that is covered by this policy." SUF ¶¶ LEX 1–2. Lexington argues that this language suffices to defeat the Aspen Policy's "Other Insurance" clause under both California and Washington law. See Mot. 127–29. At the hearing, Lexington agreed that it is not necessary to reach this argument, given the Court's analysis with the priority of coverage issue. Put another way, were the Court to reach this argument and determine that Lexington is correct, the Court would grant summary judgment in Lexington's favor. Were the Court to reach this argument and determine that Lexington is not correct, the Court would necessarily need to address the priority of coverage issue which, as described above, yields the result that there is an actual conflict.

*Fluke Corp. v. Hartford Acc. & Indem. Co.*, 145 Wash. 2d 137, 149 (2001).

These factors favor application of California law to this case. National Interstate and Lexington issued their policies in California. SUF ¶¶ NIIC11, LEX9. Although First Mercury and North River do not provide evidence that they issued their policies in California, the evidence indicates that they did not issue their policies in Washington either. *See* First Mercury Excess Policy 2 (listing an insurance broker address in Texas); North River Excess Policy 4 (listing the same insurance broker address). Gardner, the named insured on all the policies, is located in and conducts business in California. *See* SUF ¶ NIIC 9. Moreover, the events leading to the Underlying Action occurred in California and the Underlying Action was brought in a California court. *Id.* at ¶ P20.

Plaintiffs attempt to apply the above factors to the Motor Carrier Contract and argue, among other things, that the Motor Carrier Contract was negotiated, drafted, and executed in Washington. *See* Mot. 67–70. However, the disputed issue relates to the priority of coverage between Defendants' insurance policies and the Aspen Policy, not the terms of the Motor Carrier Contract. Although the National Interstate Primary Policy's blanket endorsement indirectly referenced the Motor Carrier Contract by including as additional insureds "any person or organization [Gardner is] required to add as an additional insured on this policy under a written contract, agreement or permit," SUF ¶ P10, Defendants do not argue a conflict of law as to whether Weyerhaeuser Company or Weyerhaeuser NR qualified as additional insured. *See* Mot. 76–77. Rather, Defendants assert a conflict of law regarding priority of coverage. *See* Mot. 70–73, 77–79, 81–82. Because the blanket endorsement does not have any bearing on the priority of coverage issue, the relationship that Washington has to the Motor Carrier Contract is irrelevant to that issue.[7]

[7] Plaintiffs' argument that a choice of law provision in the Motor Carrier Contract should control fails for similar reasons. *See* Mot. 62–66. Although the Motor Carrier Contract states that it "will be governed and construed in accordance with the laws of the United States or, depending on jurisdiction, the laws of the State of Washington," SUF ¶ P7, none of Defendants' insurance policies adopted this provision. The blanket endorsement in the National Interstate Primary Policy only referred the Motor Carrier Contract to determine the "additional insured[s]" and "[t]he limits of insurance applicable to the additional insured[s]." SUF ¶¶ P10–11. Plaintiffs do not present any evidence showing that the National Interstate Primary Policy incorporated any other aspect of the Motor Carrier Contract.

Even if Weyerhaeuser Company and Weyerhaeuser NR, both Washington companies, qualified as additional insureds, this relationship to Washington is far weaker than the insurance policies' relationship to California. The blanket endorsement that Plaintiffs claim includes Weyerhaeuser Company and Weyerhaeuser NR as additional insureds never mentions either company directly. SUF ¶¶ P10–11. Defendants were therefore justified in expecting that the insurance contracts they entered into with a named insured located in California covering a risk that ultimately materialized in California would be governed by California law determining priority of coverage. *See Fluke Corp.*, 145 Wash. 2d at 149–50 (considering "the protection of justified expectations" in a choice of law determination).

Accordingly, the Court GRANTS IN PART Defendants' Motion for Summary Judgment and DENIES Defendants' Motion for Summary Judgment on the first issue. To the extent that California law and Washington law differ with respect to determining the priority of coverage between Defendants' insurance policies and the Aspen Policy, California law controls.

### B. The Issue of Whether Weyerhaeuser Company and Weyerhaeuser NR's Are Additional Insureds Under Defendants' Insurance Policies Is Moot *(Issue 2)*

Plaintiffs and Defendants dispute whether Weyerhaeuser Company and Weyerhaeuser NR qualified as additional insureds under Defendants' insurance policies. *See* Mot. 84–111. Because the Court determines, for the reasons explained in Section C below, that Defendants' insurance policies are excess to the Aspen Policy, and because the Aspen Policy was not exhausted with respect to the Underlying Action, SUF ¶¶ NIIC 33–35, the Court DENIES Plaintiffs' and Defendants' Motions for Summary Judgment on the second issue as moot.

### C. Defendants' Insurance Policies Are Excess to the Aspen Policy Pursuant to California Law *(Issue 3)*

The Court has determined that to the extent California and Washington law differ in result with respect to the priority of coverage issue, California law controls.[8] California Insurance Code section 11580.9(c) provides:

Where two or more policies are applicable to the same loss arising out of the loading or

[8] *See* Section A.2. The Court therefore does not reach First Mercury and North River's arguments applying Washington Law. Mot. 129–131.

> unloading of a motor vehicle, and one or more of the policies is issued to the owner, tenant, or lessee of the premises on which the loading or unloading occurs, it shall be conclusively presumed that the insurance afforded by the policy covering the motor vehicle shall not be primary, notwithstanding anything to the contrary in any endorsement required by law to be placed on the policy, but shall be excess over all other valid and collectible insurance applicable to the same loss . . . .

CAL. INS. CODE § 11580.9(c). The California Legislature enacted section 11580.9(c) to resolve controversies over priority of coverage in circumstances such as this one, where "the driver of [a] truck was injured on the premises on which the loading or unloading occurred." *Pac. Exp. Packers v. Chubb/Pac. Indem. Grp.*, 57 Cal. App. 3d 186, 193 (1976). As between two policies covering the loss arising from such an injury, section 11580.9(c) "clearly determines the respective responsibilities of the two insurers — the policy of the owner, tenant or lessee of the premises on which the loading or unloading occurred is primary, and the insurer of the truck is the excess carrier; and as primary, the former must provide the owner of the premises with a defense and afford coverage." *Id.*

In *Nabisco, Inc. v. Transp. Indem. Co.*, a truck driver working for Trans-Con sued Nabisco for personal injuries sustained while loading a Trans-Con vehicle at a Nabisco facility. 143 Cal. App. 3d 831, 834 (1983). Nabisco was the named insured on an "umbrella excess policy" subject to a $50,000 self-insured retention. *Id.* Trans-Con was the named insured on two policies providing primary automobile liability coverage. *Id.* Nabisco claimed that it was an additional insured on these latter two policies and sought defense and indemnification under the policies. *Id.* In a footnote, the Court of Appeal determined that the trial court "correctly found" that the two policies providing automobile liability coverage were excess to the umbrella policy pursuant to California Insurance Code section 11580.9(c). *Id.* at 834 n.2.

The facts in the present case mirror those in *Nabisco*. In the Underlying Action, Gardner employee Peter Alfaro claimed that he was injured at a Weyerhaeuser NR facility while preparing to load a trailer attached to his truck. SUF ¶¶ P20–21. Weyerhaeuser NR was the named insured on an umbrella policy from Aspen. *Id.* at ¶ P17. Gardner was the named insured on Defendants' policies, which provide automobile liability coverage, and under which Weyerhaeuser Company and Weyerhaeuser NR now claim to be additional insureds. *See id.* at ¶ NIIC2–3, 5, 12–14; Mot. 84–87. Accordingly, under section 11580.9(c), Defendants' insurance policies covering the vehicle are

"conclusively presumed" to be excess to the Aspen Policy, notwithstanding any language in the Aspen policy claiming to be excess to all other policies.

Plaintiffs point out that Defendants' insurance policies also provide commercial general liability ("CGL") coverage. *See* Mot. 117. Plaintiffs do not argue that the CGL coverage provided by Defendants' insurance policies covers the losses arising from the Underlying Action. Indeed, the portion of the National Interstate Primary Policy providing CGL coverage specifically excludes "'[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured," where "use" includes "operation and 'loading or unloading.'" SUF ¶ NIIC36; National Interstate Primary Policy 80–81. Instead, Plaintiffs argue that while section 11580.9(c) applies to insurance policies providing automobile liability coverage, it does not apply to insurance policies providing both automobile liability coverage *and* CGL coverage. *See id.* 116–17. The Court does not find support for this argument in the language of the statute. Section 11580.9(c) clearly states that "the policy covering the motor vehicle shall not be primary." Plaintiffs do not cite any authority contradicting the plain language of the statute, and the Court finds none. To the contrary, the statute contains several references to "automobile liability insurance," suggesting that the Legislature knew how to refer specifically to automobile liability coverage when it intended to, and it did not intend to refer to automobile liability coverage specifically in subdivision (c). *See* CAL. INS. CODE § 11580.9(a) (setting forth the presumptions that operate "[w]here two or more policies affording valid and collectible automobile liability insurance apply"); CAL. INS. CODE § 11580.9(h) (setting forth the presumptions that operate "when two or more policies affording valid and collectible automobile liability insurance apply"); *Romano v. Mercury Ins. Co.*, 128 Cal. App. 4th 1333, 1343 (2005) ("When the Legislature uses different words as part of the same statutory scheme, those words are presumed to have different meanings."). Accordingly, the Court declines to read into section 11580.9(c) an exclusion for policies covering both motor vehicles and commercial premises.

At the hearing, Plaintiffs argued that the California Legislature enacted section 11580.9(c) to resolve priority of coverage disputes among excess policies, and not priority of coverage disputes between a primary policy and an excess policy. They therefore asserted that the National Interstate

Primary Policy is primary to the Aspen Policy, notwithstanding the fact that the National Interstate Primary Policy is a "policy covering the motor vehicle," which section 11580.9(c) commands "shall not be primary." CAL. INS. CODE § 11580.9(c). Plaintiffs' distinction between primary and excess policies finds no support in the text of section 11580.9(c) or the legislative history. If the Legislature wanted to make such a distinction, it could have done so.

The plaintiffs in *GuideOne Mut. Ins. Co. v. Utica Nat'l Ins. Grp.*, 213 Cal. App. 4th 1494 (2013) made a similar argument concerning a different priority of coverage rule. There, an employee's negligent actions were covered by his own primary and excess insurance policies, as well as his employer's primary and excess insurance policies. *Id.* at 1498–99. The court held that under a California rule making the employer's vicarious liability insurance secondary to the employee's own insurance, "both [of the employee's] policies are primary to both [of the employer's] policies, because [the rule] is based upon principles of vicarious liability, not more general rules governing primary and excess policies." *Id.* at 1504. Here, the rule enunciated in section 11580.9(c) is similarly based on "the total public policy of [California] respecting the order in which two or more of such liability insurance policies covering the same loss shall apply," CAL. INS. CODE § 11580.8, and not on any language in the policies that might require exhaustion of other underlying policies. As such, section 11580.9(c) renders the National Interstate Primary Policy and the Excess Policies secondary to the Aspen Policy.

Plaintiffs additionally argue that Defendants waived their right to use California Insurance Code section 11580.9(c) as a coverage defense because they did not cite the statute as a basis for denying coverage prior to the settlement of the Underlying Action. *See* Mot. 117–19. However, the only case Plaintiffs cite for this proposition under California law suggests the opposite. *See Britz Fertilizers, Inc. v. Nationwide Agribusiness Ins. Co.*, No. 1:10-CV-02051-AWI, 2013 WL 5519605, at *30 (E.D. Cal. Oct. 3, 2013) ("California courts uniformly hold an insurer may waive its right to assert a defense of non-coverage by failing to adequately reserve its rights, . . . but [Plaintiff] has provided no authority—and the Court's research reveals no authority—holding a reservation of rights letter must set forth all possible non-coverage defenses on which the insurer could conceivably rely in order to preserve those defenses for a subsequent action disputing coverage . . ."). Indeed,

"California courts have applied the general rule that waiver requires the insurer to intentionally relinquish its right to deny coverage and that a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 31, 900 P.2d 619 (1995).

More importantly, California Insurance Code section 11580.9(f) provides:

> The presumptions stated in subdivisions (a) to (d), inclusive, may be modified or amended *only* by written agreement signed by *all* insurers who have issued a policy or policies applicable to a loss described in these subdivisions and *all* named insureds under these policies.

CAL. INS. CODE § 11580.9(f) (emphasis added). Therefore, even if Defendants could have waived some coverage defenses, Defendants could not have waived the application of section 11580.9(c) without signing a written agreement. *See Wilshire Ins. Co. v. Sentry Select Ins. Co.*, 124 Cal. App. 4th 27, 36 (2004) (describing the process laid out in section 11580.9(f) as "cumbersome," but the only means by which plaintiffs may overcome the conclusive presumptions of section 11580.9). Because Plaintiffs have not provided evidence of such an agreement, section 11580.9(c) applies.[9]

The Court additionally notes that absent section 11580.9(f), it is unclear that section 11580.9(c) would be waivable at all. "Section 11580.9 of the Insurance Code expresses the total public policy of [California] respecting the order in which two or more of such liability insurance policies covering the same loss shall apply." Cal. Ins. Code § 11580.8. As such, the provisions of

---

[9] At the hearing, Plaintiffs argued that the National Interstate Primary Policy and Excess Policies constitute written agreements overcoming the presumption spelled out in section 11580.9(c). These policies, however, were not "signed by all insurers who have issued a policy or policies applicable to [the] loss described," CAL. INS. CODE § 11580.9(f), as Aspen was not a party to those agreements. To the extent Plaintiffs ask the Court to additionally consider the Aspen Policy together the National Interstate Primary Policy and Excess Policies as a single "written agreement" satisfying section 11580.9(f)'s requirements, the Court declines to do so. Plaintiffs present no evidence showing that Defendants were aware of the Aspen Policy when they signed their respective insurance contracts, or that Aspen was aware of Defendants' policies when it signed the Aspen Policy. Even if they had, none of the insurance policies make explicit reference to section 11580.9. If insurance contracts entered into in such a manner could overcome the presumptions in section 11580.9, then subdivision (f) would be meaningless, and the presumptions in 11580.9 would almost never apply. Section 11580.9(f) appears to require a written agreement evidencing a deliberate choice on the part of the insurers and named insureds to overcome section 11580.9's presumptions. Even if it does not, it at least requires a written agreement signed by all insurers and all insureds, and such an agreement is not present here.

The Court has considered the legislative history presented in the Supplemental Brief filed, with leave of Court, by the Plaintiffs. ECF No. 137-1. As an initial matter, legislative history cannot generally be used to give a statute a meaning contrary to its plain text. And in this instance, the legislative history does not call for such a meaning—it merely confirms that where there is a written agreement signed by all insurers and all insureds, such an agreement will prevail over the presumptions in the statute. Therefore, it does not change the Court's analysis or its conclusion: Subdivision (f) requires *a* written agreement signed by *all* insurers and *all* insureds.

section 11580.9 are not waivable through typical means. *See* Cal. Civ. Code § 3513 ("[A] law established for a public reason cannot be contravened by a private agreement."); *Cook v. King Manor & Convalescent Hosp.*, 40 Cal. App. 3d 782, 793 (1974) (further holding that a plaintiff who "could not expressly waive public policy [under Civil Code section 3513] . . . may not be estopped to plead it").

Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Defendants' Motion for Summary Judgment on the third issue.

## V. CONCLUSION

For the reasons discussed above, the Court GRANTS IN PART Defendants' Motion for Summary Judgment on the first issue, DENIES Defendants' Motion for Summary Judgment on the second issue, and GRANTS Defendants' Motion for Summary Judgment on the third issue. The Court DENIES Plaintiffs' Motion for Summary Judgment on all three issues.

IT IS SO ORDERED.

Dated: August 1, 2022

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge