O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEYERHAEUSER COMPANY, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>AIG PROPERTY CASUALTY, INC., et al.,<br><br>                    Defendants. | Case No.: 2:21-cv-03886-MEMF-E<br><br>**ORDER GRANTING MOTION FOR RULE 54(B) CERTIFICATION AND TO STAY PROCEEDINGS [ECF No. 233]** |

Before the Court is a Motion for an order (1) certifying the Court's December 28, 2023 Order as a final and appealable order, pursuant to Federal Rule of Civil Procedure 54(b), and (2) staying the action. For the reasons stated herein, the Court GRANTS the Motion.

**I.    Factual Background and Procedural History**

The factual background and procedural history have been described at length in the Court's previous Orders. *See* ECF Nos. 142, 222. The Court will only address aspects relevant to this Order.

**A.  Relevant Insurance Policies**

Plaintiff Weyerhaeuser NR Company ("Weyerhaeuser NR," or collectively with Plaintiff Weyerhaeuser Company, "Weyerhaeuser") executed a contract with non-party Gardner Trucking,

Inc. ("Gardner") whereby Gardner would ship and transport Weyerhaeuser NR products across the United States. *See* ECF No. 222 at 2. Gardner was required under this contract to purchase liability insurance and name Weyerhaeuser as an additional insured. *See id.*

Gardner purchased such insurance from Defendant National Interstate Insurance Company ("National Interstate"). *See id.* Gardner also purchased several excess liability insurance policies that provided coverage after the National Interstate primary policy and lower-level policies were exhausted. *Id.* These excess liability policies were: a first-level excess policy from Defendant Lexington Insurance Company ("Lexington"), a second-level excess policy from National Interstate, a third level excess policy from Defendant First Mercury Insurance Company ("First Mercury"), and a fourth-level excess policy from Defendant North River Insurance Company ("North River"). *See id.* Weyerhaeuser also purchased for itself an "umbrella liability policy" from Plaintiff Aspen Insurance UK Limited ("Aspen," or collectively with Weyerhaeuser, "Plaintiffs"). *See id.*

### B. The Underlying Incident and Underlying Action

Non-party Peter Alfaro was allegedly injured at a Weyerhaeuser NR facility in Santa Clarita, California. *See id.* at 3. Alfaro brought suit against Weyerhaeuser in Los Angeles County Superior Court on January 25, 2017. *See id.* Weyerhaeuser Company notified Aspen and Defendants of the Underlying Action. *See id.* National Interstate agreed to defend and indemnify Weyerhaeuser Company and Weyerhaeuser NR pursuant to the National Interstate Primary Policy. *See id.* Lexington, National, First Mercury, and North River all denied coverage under the excess policies for various reasons. *See id.*

Weyerhaeuser Company and Weyerhaeuser NR settled the Underlying Action for $17,500,000. *See id.* Of this amount, National Interstate paid $1,000,000, Weyerhaeuser NR paid $9,000,000 to satisfy the $10,000,000 self-insured retention under the Aspen policy, and Aspen (as Weyerhaeuser's umbrella insurer) paid the remaining $7,500,000. *Id.*

### C. This Action

Plaintiffs (that is, Weyerhaeuser Company, Weyerhaeuser NR, and Aspen) brought suit in this Court against the various excess policy insurers, including National Interstate, who paid $1,000,000 under the primary policy but denied coverage under the excess policy. *See id.* at 3–4.

Weyerhaeuser and Aspen each brought various causes of action seeking recovery of the money they paid. *See id.* National Instate brought a counterclaim seeking, among other remedies, recovery of the money it paid, based on the theory that it was never actually obligated to indemnify Weyerhaeuser and reserved the right to seek reimbursement. *See id.* at 4.

The parties cross moved for summary judgment on three issues: whether California law determines the priority of coverage between Defendants' insurance policies and the Aspen Policy; (2) whether Weyerhaeuser Company or Weyerhaeuser NR qualify as additional insureds under Defendants' insurance policies; and (3) whether Defendants' insurance policies are primary to, or excess to, the Aspen Policy. *See id.* On August 1, 2022, the Court issued a summary judgment Order holding that: (1) California law determined the priority of coverage between Defendants' insurance policies and the Aspen Policy, (2) the issue of whether Weyerhaeuser Company or Weyerhaeuser NR qualify as additional insureds under Defendants' insurance policies was moot (in light of part three); and (3) Defendants' insurance policies are excess to the Aspen policy pursuant to California law. *See id.* at 4–5. The Court's ruling as to point three—that California law made Defendants' policies excess to the Aspen policy—focused on the Court's interpretation of California Insurance Code section 11580.9(c),[1] which the Court held made Weyerhaeuser's insurance primary to Gardner's insurance, even though Weyerhaeuser's own insurance might have been secondary but for section 11580.9. *See* ECF No. 142 at 10–15. The Court further held, and later reaffirmed on the Motion for Reconsideration (discussed below), that Weyerhaeuser's self-insurance retention ("SIR") was properly viewed as a form of insurance and thus also primary to the policies purchased from Defendants. *See id.*; *see also* ECF No. 222 at 12–16. The Court acknowledged that there was "no

---

[1] California Insurance Code section 11580.9(c) states that:

> Where two or more policies are applicable to the same loss arising out of the loading or unloading of a motor vehicle, and one or more of the policies is issued to the owner, tenant, or lessee of the premises on which the loading or unloading occurs, it shall be conclusively presumed that the insurance afforded by the policy covering the motor vehicle shall not be primary, notwithstanding anything to the contrary in any endorsement required by law to be placed on the policy, but shall be excess over all other valid and collectible insurance applicable to the same loss . . . .

Cal. Ins. Code § 11580.9(c). The Court held that, because Alfaro was allegedly injured at Weyerhaeuser's facility, section 11580.9 dictates that Weyerhaeuser's insurance must be primary to the policies purchased by Gardner from Defendants. *See* ECF No. 142 at 10–15.

1  binding authority" on the application of section 11580.9 to the SIR, and that "no California Court
2  has directly addressed the issue." ECF No. 222 at 12.
3        Weyerhaeuser filed a Motion for Reconsideration which sought, among other relief, that the
4  Court change its holding on the application of section 11580.9 to the SIR. The parties also jointly
5  filed a second Motion for Summary Judgment. On December 28, 2023, the Court issued an Order
6  denying the Motion for Reconsideration and granting in part the second Motion for Summary
7  Judgment. ECF No. 222 ("December 2023 Order").
8        Given the Court's rulings, the current state of the case is that all of Plaintiffs' affirmative
9  claims fail, and the only remaining issue is whether National Interstate's counterclaim (for
10 reimbursement of the $1,000,000 National Interstate paid) is meritorious. *See id.* at 34. As the Court
11 explained in its most recent order, National Interstate's counterclaim will in part turn on whether
12 National Interstate waived its right to reimbursement, which the Court held is an issue on which
13 there is a genuine dispute of material fact. *See id.* at 32–33. Per the Court's rulings, all of Plaintiffs'
14 claims fails because of the Court's interpretation of section 11580.9. *See id.* at 28–29.

    **D. The Instant Motion**

      Weyerhaeuser filed the instant Motion and a Memorandum of Points and Authorities on March 8, 2024. ECF No. 233 ("Motion" or "Mot."); ECF No. 233-1 ("MPA"). Weyerhaeuser requests (1) that the Court certify the December 2023 Order as a final and appealable order, pursuant to Federal Rule of Civil Procedure 54(b), and (2) that the Court stay the action pending appeal. *See* Mot. Aspen joins in the Motion. *See* ECF No. 235. National Interstate filed an Opposition to the Motion on March 22, 2024, and Weyerhaeuser filed a Reply in support of the Motion on March 29, 2024. ECF No. 237 ("Opposition" or "Opp'n"); ECF No. 240 ("Reply").

**II.**    <u>Applicable Law</u>

    **A. Rule 54(b)**

      Generally, only "final decisions of the district courts of the United States" may be appealed. *See* 28 U.S.C.A. § 1291. Under typical circumstances, an order that "adjudicates fewer than all the claims" or determines "the rights and liabilities of fewer than all the parties" is not a final order and so is not appealable. *See* Fed. R. Civ. P. 54(b). However, when an action involves multiple claims or

multiple parties, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties," and thus make an order that resolves only part of the action appealable.[2] *See id.* A court should do so "only if the court expressly determines that there is no just reason for delay." *Id.*

To enter final judgment pursuant to Rule 54(b), a court must "first must render an ultimate disposition of an individual claim." *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 574 (9th Cir. 2018). "The court then must find that there is no just reason for delaying judgment on this claim." *Id.* District courts have discretion in making these findings. *See id.* at 574–76, *see also Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 468 (9th Cir. 1987).

### B. Staying an Action

The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857 (9th Cir. 1979). Whether to stay a case is left to the "sound discretion" of a trial court. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). In exercising this discretion, courts should consider "the competing interests which will be affected by the granting or refusal to grant a stay," including "the possible damage which may result from the granting of a stay," "the hardship or inequity which a party may suffer in being required to go forward," and "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*; *see also Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (similar).

---

[2] This process—directing entry of a final judgment as to only certain claims or parties to allow appeal—is often referred to as "certification" under Rule 54(b). *See James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002). This is a "misnomer," as Rule 54(b) does not actually require any certification, and instead allows a court to "sever this partial judgment for immediate appeal." *Id.*

If an appeal were filed, it would change the analysis of whether a stay is warranted. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). This rule exists to "to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." *United States v. Claiborne*, 727 F.2d 842, 850 (9th Cir. 1984).

**III. Discussion**

The Court finds it appropriate to enter a final judgment pursuant to Rule 54(b), and to stay the action pending the anticipated appeal. Thus, Weyerhaeuser's Motion is GRANTED.

**A. The Court will enter a final judgment pursuant to Rule 54(b).**

The Court first finds it appropriate to enter a final judgment in order allow an appeal. To enter final judgment pursuant to Rule 54(b), a court must "first must render an ultimate disposition of an individual claim," and "then must find that there is no just reason for delaying judgment on this claim." *Pakootas*, 905 F.3d 565, 574 (9th Cir. 2018).

First, the Court has already entered an ultimate disposition on some individual claims. A "claim" in this context means, at minimum, "a set of facts giving rise to legal rights in the claimant." *Id.* at 575. The Court has determined that, based on the Court's interpretation of section 11580.9 and application of it to the facts here, all of the causes of action Plaintiffs brought fail, leaving only National Interstate's counterclaims. *See* December 2023 Order at 28–29. This was plainly a disposition of at least one "individual claim." *See Pakootas*, 905 F.3d at 574. National Interstate does not dispute as such in its opposition. *See* Opp'n (focusing on the argument that there is no just reason for delaying judgment). Thus, the first step is satisfied.

Second, the Court finds that there is no just reason to delay judgment on the disposed of claims. The Court has already noted that its interpretation of section 11580.9 and the application of section 11580.9 to the facts of this case—particularly as to the SIR—is an unsettled issue of law. *See* December 2023 Order at 12. And nearly the entirety of this action, as to both the disposed of claims and the as-yet-unresolved counterclaims, turns on whether the Court applied section 11580.9 correctly. *See* December 2023 Order. Accordingly, the Court finds it would be efficient to allow an

1  appeal on this issue before proceeding to trial. If the Court's holding were overturned, an entirely
2  different trial would likely be necessary, with Plaintiffs seeking to prove their affirmative claims. It
3  will be better to first resolve whether the Court's holding is correct and then proceed to trial, than to
4  go through with a trial that will consume both the parties' and the Court's resources and might be all
5  for nought.
6        In its Opposition, National Interstate argues that if the Ninth Circuit affirms the Court's
7  rulings, Plaintiffs might appeal again after trial. *See* Opp'n at 3. This may be so. But this alone does
8  not warrant denying the Motion. If the action proceeds to trial now, and the Ninth Circuit overturns
9  the Court's rulings as to section 11580.9, there might need to be a second trial, which itself might be
10  followed by a second appeal. In other words, there is no path forward that entirely eliminates the risk
11  of multiple appeals. The Court finds it efficient to resolve the issue of section 11580.9 before
12  proceeding to trial, even if that may result in a second appeal later on other issues. National
13  Interstate also notes that an appeal would cause delay of an uncertain amount. *See id.* But again,
14  while this may be so, the Court still finds resolving the issue of section 11580.9 before trial to be the
15  most efficient way to resolve this action.
16        Accordingly, the Court will enter a final judgment on Plaintiffs' claims pursuant to Rule
17  54(b).
18      **B. The Court will stay the action.**
19        The Court also finds it appropriate to stay the action pursuant to the Court's inherent power.
20  In analyzing whether to grant a stay, courts look "the competing interests which will be affected by
21  the granting or refusal to grant a stay," including "the possible damage which may result from the
22  granting of a stay," "the hardship or inequity which a party may suffer in being required to go
23  forward," and "the orderly course of justice measured in terms of the simplifying or complicating of
24  issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d
25  at 268.
26        There is some possible damage from a stay. The action will be delayed, which might affect
27  the availability of witnesses or evidence, and might cause some prejudice to National Interstate (the
28

only party with affirmative claims remaining). But this alone does not require a denial of the requested stay.

The Court finds that the possible harm from going forward outweighs the possible damage from a stay. As discussed above, moving forward with trial without resolving the issue of section 11580.9 risks an appellate decision that entirely undoes the trial and requires starting over. Moving forward with trial now will delay resolution of the section 11580.9 issue and would risk a possible outcome where the second trial is further delayed. It is more efficient to stay the action and resolve this key question that affect nearly all aspects of the case.

The Court further finds that the action will be simplified by allowing the Ninth Circuit to resolve the section 11580.9 issue, for similar reasons to those described above.

Additionally, although a notice of appeal has not yet been filed, the Court understands that Plaintiffs intend to appeal the Court's December 2023 Order now that they are authorized to do so by the previous section of this Order. Once filed, such a notice of appeal would "divest[] the district court of its control over those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58. The Court finds that, given the centrality of section 11580.9 to this action, the entire case will be involved in the appeal. Thus, the filing of this notice of appeal will necessitate a stay. To deny a stay now because that notice has not yet been filed would be to elevate form of substance—because the Court has authorized Plaintiffs to appeal, and they appear poised to do so, the Court will stay the action pursuant to its inherent power.

## IV. Conclusion

For the reasons stated herein, the Court ORDERS as follows:

1. Plaintiffs' Motion is GRANTED.
2. The Court's December 2023 Order (ECF No. 222) shall be considered a final and appealable judgment as to Plaintiffs' claims, pursuant to Federal Rule of Civil Procedure 54(b).
3. This action is STAYED pending the resolution of Plaintiffs' appeal.

      a.  The stay shall be automatically lifted if Plaintiffs fail to file a notice of appeal within 30 days of this Order. Otherwise, the stay shall continue until the Court orders it lifted.

IT IS SO ORDERED.

Dated: April 15, 2024

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge